**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pharmacy Corporation of America, | No. CV-23-02437-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Allegiant Healthcare of Phoenix LLC, Allegiant Healthcare West LLC, and Allegiant Healthcare East LLC, | |
| Defendants. | |

Plaintiff PharMerica Corporation of America provided pharmacy goods and services to skilled nursing facilities operated by defendants Allegiant Healthcare West, LLC, and Allegiant Healthcare East, LLC (collectively "Allegiant").[1] After Allegiant failed to pay PharMerica's invoices, PharMerica brought a complaint for breach of contract for non-payment, breach of contract for improper termination, unjust enrichment, and account stated. (Doc. 1.) Allegiant filed counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. (Doc. 17.) PharMerica moved for summary judgment on its breach of contract for non-payment and account stated claims and Allegiant's counterclaims. (Doc. 41.) Its motion is granted.

**I.    Background**

PharMerica provides pharmacy goods and services to skilled nursing facilities.

---

[1] Defendant Allegiant Healthcare of Phoenix, LLC, was also sued but did not answer the complaint and its default was entered. (Doc. 40.) As discussed at the end of this order, PharMerica must explain how it plans to proceed against this entity.

(Doc. 41-2 at 2.) On April 15, 2020, PharMerica entered into a Pharmacy Services Agreement ("PSA") with Allegiant to provide such services. (Doc. 41-2 at 2.) Pursuant to the terms of the agreement, Allegiant ordered drugs from PharMerica for its residents and PharMerica dispensed the drugs. (Doc. 41-2 at 2.)

PharMerica sent Allegiant detailed monthly invoices for its services. (Doc. 41-2 at 2.) These invoices identified the drugs provided, which resident they were provided for, the day they were dispensed, and the corresponding charges. (Doc. 41-2 at 2–3.) The invoices also included an account statement detailing all open invoice amounts due. (Doc. 41-2 at 3.) The PSA required Allegiant to pay PharMerica's invoices within 90 days. (Doc. 41-3 at 4.) Under the PSA, any past-due amounts accrue interest at a rate of 10 percent per annum. (Doc. 41-3 at 5.)

In 2020, Allegiant hired Integra Scripts, LLC to audit PharMerica's performance. (Doc. 46 at 16.) Integra sent Allegiant regular emails describing "opportunities for cost-savings, problems with dosages and amounts of medications, and over-charging." (Doc. 46 at 16.) Integra concluded PharMerica "continuously" provided Allegiant the incorrect type, amount, and dosage of medications. (Doc. 46 at 16.) Based on these audits, Allegiant identified overcharges or other inaccuracies in PharMerica's invoices of at least $600,000. (Doc. 46 at 16.) These inaccuracies include charges for medications that were not actually provided or provided in error. (Doc. 46 at 65–78.) Attempts to return medications that were incorrectly supplied were rejected and PharMerica insisted on payment. (Doc. 46 at 16.)

Allegiant alleges "PharMerica was promptly made aware of these disputes many times, but did not correct its performance." (Doc. 46 at 16.) As a result, Allegiant canceled the PSA in 2023 and declined to pay the $1,012,530.97 total PharMerica claimed it was owed by the three Allegiant facilities. (Doc. 41-2 at 3; Doc. 46 at 16.) PharMerica filed its complaint alleging these actions constituted breach of contract for non-payment, breach of contract for improper termination, and unjust enrichment. (Doc. 1.) It also alleges Allegiant's failure to object to its charges constituted an account stated for which PharMerica is entitled to recover. (Doc. 1.) Allegiant brought counterclaims, alleging

1  PharMerica improperly charged Allegiant resulting in breach of contract, breach of the
2  covenant and good faith and fair dealing, and unjust enrichment. (Doc. 17.)

3  After Allegiant of Phoenix failed to appear in this case, PharMerica moved to enter
4  default against it, which was granted. (Docs. 39, 40.) PharMerica then moved for summary
5  judgment against the other Allegiant defendants (but not Allegiant Healthcare of Phoenix)
6  as to its breach of contract for non-payment claim or alternatively its account stated claim;
7  for the unpaid principal amount and pre- and post-judgment interest; and on Allegiant's
8  counterclaims. (Doc. 41.) Its motion is granted.

9  **II.     Legal Standard**

10  A court must grant summary judgment "if the movant shows that there is no genuine
11  dispute as to any material fact and the movant is entitled to judgment as a matter of law."
12  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The
13  movant bears the burden of presenting the basis for the motion and identifying evidence it
14  believes demonstrates the absence of a genuine issue of material fact. *Id*. at 323. A genuine
15  dispute exists if "the evidence is such that a reasonable jury could return a verdict for the
16  nonmoving party," and material facts are those "that might affect the outcome of the suit
17  under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

18  "The evidence of the non-movant is to be believed, and all justifiable inferences are
19  to be drawn in his favor." *Id*. at 255. But a non-movant cannot rest on mere allegations or
20  denials and must instead show there is "sufficient evidence supporting the claimed factual
21  dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth
22  at trial." *Id*. at 249 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 289
23  (1968)).

24  **III.    Claims against Allegiant**

25  PharMerica alleges Allegiant breached the PSA by failing to pay for goods and
26  services provided to its facilities and owes PharMerica $1,012,530.97 plus $174,090.48 in
27  interest. (Doc. 41-2 at 3.) A claim for breach of contract requires the plaintiff show
28  "existence of the contract, its breach and the resulting damages." *Thomas v. Montelucia*

*Villas, LLC*, 302 P.3d 617, 621 (Ariz. Sup. Ct. 2013). The parties do not dispute the existence of a contract or that PharMerica provided drugs that PharMerica valued at $1,012,530.97.[2] But Allegiant argues its failure to pay PharMerica was justified under the terms of the PSA because PharMerica's bills included overcharges and other inaccuracies.

Allegiant never identifies with specificity the particular charges they dispute, on what basis, whether their concerns were ever communicated to PharMerica, or how PharMerica responded. During discovery, PharMerica requested Allegiant "identify with specificity each charge that [Allegiant] contend[s] is in error" and the basis for disputing each charge. (Doc. 41-8 at 5; Doc. 41-9 at 5.) Allegiant responded that the interrogatory was "overly broad, vague" and "premature in light of the present stage of discovery" but referred PharMerica to "those documents disclosed in connection with Defendant's responses to Plaintiff's requests for production pursuant to Rule 33(d)." (Doc. 41-8 at 6; Doc. 41-9 at 6.) Rule 33(d) allows a party to identify business records from which information might be obtained.

Allegiant's mention of Rule 33(d) appears to be referencing two types of emails, neither of which create a material dispute of fact. The first is a set of emails from Integra to Allegiant containing monthly billing audits. (Doc. 46 at 18–24.) In these emails, Integra summarizes potential billing discrepancies for Allegiant's review. For instance, an email sent from Integra to certain Allegiant employees notes Integra submitted "$5,814.11 in billing discrepancies for review" and "$4,514.13 in outstanding medications that may still be returned." (Doc. 46 at 18.) But this email does not point to any specific charges at issue in this case, on what basis they were flagged by Integra, or if these issues were ever

---

[2] PharMerica submitted outstanding invoices for Allegiant's Mesa facility but not its Phoenix or Springdale Village facilities. (Doc. 41-4.) It provided a chart summarizing the purportedly unpaid charges and another chart summarizing the accrued interest. (Docs. 41-5, 41-6.) PharMerica does not explain why it included the Phoenix facility given that PharMerica is not seeking summary judgment against that facility, but regardless the chart appears to be admissible under Fed. R. Evid. 1006(a), which allows admission of a "summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court." If Allegiant wished to dispute the admissibility of the chart or the underlying documents, it was required to do so. Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Allegiant did not.

- 4 -

communicated to or resolved by PharMerica under the terms of the PSA. They only summarize disputes Integra says were submitted to PharMerica, but not which of these charges Allegiant now disputes, if any.

The second type of email contains disputes Allegiant did communicate to PharMerica, of which Allegiant only provides one specific example. In an email on June 29, 2023 from an Allegiant employee to a PharMerica employee, Allegiant identifies a resident by first initial and last name and says medication for this patient "should not be billed to [Allegiant]." (Doc. 46 at 78.) But although it identifies the patient, the email does not identify the relevant Allegiant facility, the billing date, or why the charge was improper under the PSA.

Separately, Allegiant provides a third category of emails in opposition to PharMerica's motion. These documents are emails from Integra to Allegiant listing monthly "Outstanding Credits," amounts "Credited," and "Total Disputed" amounts. (Doc. 46 at 65–75.) As an initial matter, Allegiant provided these documents for the first time on December 2, 2024 in its opposition to PharMerica's motion for summary judgment (Doc. 47 at 22), months after the close of discovery. (Doc. 23 at 2 (setting the close of fact discovery for September 13, 2024).) Allegiant has not explained why its failure to provide these documents as required under Fed. R. Civ. P. 26(a) and (e) was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."). These documents therefore could not be used to defeat summary judgment even if their contents were relevant.

But even if these documents had been provided to PharMerica before the close of discovery, they still would not create a material dispute of fact. For example, an email sent from Integra to certain Allegiant employees notes amounts disputed under categories including "Misc Charges," "PA Non-Covered," and "Patient Discharged." (Doc. 46 at 65.) This email does not specify any individual charges in dispute. It also does not provide

- 5 -

underlying facts to support Integra's claims that these charges were improperly made under the PSA, nor confirm whether specific disputes were ever communicated to PharMerica, nor whether these charges are still disputed or were resolved. (Doc. 46 at 65.)

Finally, Allegiant provides a declaration from Ariel Fein, the Manager of Allegiant's Mesa and Springdale Village facilities, in support of its opposition to PharMerica's motion. (Doc. 46 at 15.) Fein testifies Allegiant was "overcharged or wrongfully charged at least $600,000 during the course of the Purchasing Agreement." (Doc. 46 at 16.) But Fein does not provide any evidence allowing the court to assess the accuracy of that conclusion. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence."); *see also Paskenta Band of Nomlaki Indians v. Crosby*, No. 215CV00538MCECMK, 2017 WL 385922, at *5 (E.D. Cal. Jan. 24, 2017) (finding non-moving party's "vague declarations" insufficient to defeat motion for summary judgment).

The court declines to comb through the partially-submitted invoices or other parts of the record to identify potentially disputed charges. *See Carmen v. S.F. Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001); *see also Indep. Towers of Wash. v. Wash.,* 350 F.3d 925, 929 (9th Cir. 2003) ("[j]udges are not like pigs, hunting for truffles buried in briefs") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). The evidence submitted by Allegiant is not "such that a reasonable jury could return a verdict for the nonmoving party" because Allegiant has only argued in a conclusory fashion that it was "overcharged" or "misbilled." *Anderson*, 477 U.S. at 248 (1986). Allegiant failed to produce any facts showing this was true. Accordingly, PharMerica's motion for summary judgment is granted as to its breach of contract for non-payment claim, although the appropriate amount of damages will require an additional filing.

Because PharMerica moves for summary judgment as to its account stated claim only in the alternative, the court declines to reach this issue.

- 6 -

### IV. Counterclaims against PharMerica

PharMerica also moves for summary judgment in its favor as to Allegiant's counterclaims. Allegiant claimed PharMerica improperly charged Allegiant for its services resulting in breach of contract, breach of the covenant and good faith and fair dealing, and unjust enrichment. (Doc. 17.) Allegiant's counterclaims are premised on the same unsupported conclusory statements it argued in opposition to PharMerica's breach of contract claim. (Doc. 46 at 10.) Like there, Allegiant is unable to point to any specific charges that were improper under the PSA. Accordingly, PharMerica's motion for summary judgment is granted as to Allegiant's counterclaims.

### V. Remaining Proceedings

PharMerica's motion sought amounts owed not just by Allegiant but also Allegiant Healthcare of Phoenix. PharMerica has not explained why it would be appropriate to award judgment against the appearing Allegiant defendants for amounts allegedly owed by a separate entity. PharMerica also has indicated it "will dismiss without prejudice any of its remaining claims in the case" if the court entered summary judgment in its favor as to either Count I or Count IV and dismissed Allegiant's counterclaims. But PharMerica does not specify if that dismissal would include claims asserted against Allegiant Healthcare of Phoenix.

PharMerica must file a statement explaining the appropriate monetary judgment that should be entered and against which defendants. In particular, if PharMerica believes judgment should be entered against Allegiant Healthcare West, LLC, and Allegiant Healthcare East, LLC in an amount that includes amounts owed by Allegiant Healthcare of Phoenix, PharMerica must explain its theory for imposing joint and several liability. PharMerica must also state whether its intent to dismiss the remaining claims means it will dismiss claims asserted against Allegiant Healthcare of Phoenix.

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 41) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** Allegiant's counterclaims (Doc. 17) are **DISMISSED**.

**IT IS FURTHER ORDERED** no later than **May 27, 2025**, PharMerica shall file a statement identifying the correct monetary judgment, which defendants that judgment should be entered against, whether that judgment should be joint and several, and whether it will dismiss all remaining claims against all defendants.

Dated this 20th day of May, 2025.

Honorable Krissa M. Lanham
United States District Judge